## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

AISHA L. BEATTY WHITE,

       Plaintiff,

       v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

       Defendant.

CIVIL ACTION NO. 3:22-cv-00457

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Aisha L. Beatty White, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I. BACKGROUND

On January 13, 2019, Beatty White protectively filed a claim for disability insurance benefits, asserting a disability onset date of January 3, 2019. The claim was initially denied by state agency reviewers on May 16, 2019, and upon reconsideration on October 31, 2019. The plaintiff

then requested an administrative hearing.

A telephone hearing was subsequently held on January 27, 2021, before an administrative law judge, Richard E. Guida (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Michael Kibler. The plaintiff was represented by counsel at the hearing.

On February 9, 2021, the ALJ denied Beatty White's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Beatty White was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Beatty White had not engaged in substantial gainful activity from January 3, 2019, through the date of the decision. At step two, the ALJ found that White had the severe impairments of: asthma; degenerative joint disease; fibromyalgia; migraines; and obesity. At step three, the ALJ found that Beatty White did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 (eff. Apr. 1, 2018).[1]

Between steps three and four of the sequential evaluation process, the ALJ assessed Beatty White's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Beatty White had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(b),[2] with the following limitations:

> [S]he is limited to occasional postural movements except she can never climb ladders, ropes, and scaffolds, and she should avoid concentrated exposure to vibration / noise / fumes / odors / dust / gases / poor ventilation.

(Tr. 19.)

In making these factual findings regarding Beatty White's RFC, the ALJ considered her symptoms and the extent to which they could

---

[1] We note that the agency's list of musculoskeletal disorders was extensively revised effective April 2, 2021, a few months after this plaintiff's application for disability and disability benefits was adjudicated by the agency. *See generally* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020) (to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1).

[2] The Social Security regulations define "sedentary work" as a job that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Beatty White was unable to perform her past relevant work as a teacher's aide and electronics tester, as actually or generally performed.

At step five, the ALJ concluded that, Beatty White was capable of performing other work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational experts, the ALJ concluded that Beatty White was capable of performing the requirements of representative occupations such as: table worker (DOT # 739.687-182), final assembler (DOT # 713.687-018), or bonder semi-conductor (DOT # 726.687-066). Based on this finding, the ALJ concluded that Beatty White was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on March 2, 2022, making the ALJ's February 2021 decision the final decision of the Commissioner subject to judicial review by this court.

Beatty White timely filed her complaint in this court on March 28, 2022. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this Court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits administrative decisions).

Beatty White asserts on appeal that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider Beatty White's subjective allegations regarding her symptoms,

particularly the effects of her severe migraine headache disorder. *See generally* 20 C.F.R. § 404.1502(i) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 404.1529(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. § 404.1529(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017

WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 20–24.) This included the plaintiff's statements regarding the limiting effects of her symptoms. Based on his consideration of the whole record, the ALJ properly concluded that, while Beatty White's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the

record." (Tr. 20.)

The plaintiff argues that the ALJ's evaluation of her symptoms, and consequently his evaluation of her RFC, was deficient because the ALJ failed to adequately consider and analyze her migraine headache condition. The plaintiff suggests that the ALJ's analysis of her migraine condition was limited to a single paragraph, referencing a single page in the nearly 2,500-page administrative record. In essence, the plaintiff contends that the ALJ failed to cite contrary medical evidence, and thus he was not entitled to reject or discredit her subjective testimony regarding the frequency and severity of her headaches, or their impact on her ability to work.

The premise of this argument by the plaintiff, however, is belied by the ALJ's written decision, which addressed the migraine condition at multiple points. First, the ALJ considered the plaintiff's migraine headache condition at step two and found to be severe. (Tr. 17.) Next, the ALJ expressly considered the condition at step three, finding that the plaintiff's condition did not medically equal listings 11.02B or D concerning dyscognitive seizures. (Tr. 19 ("Although the claimant has migraines, the record does not show that the seizure listing is medically

equaled secondary to the claimant's migraines. In fact, treatment has been somewhat helpful in regard to her migraines.").) *See generally* Soc. Sec. Ruling 19-4p, 2019 WL 4169635, at *7 (providing that a medically determinable impairment of primary headache disorder should be evaluated at step three under listings 11.02B and D).

Then, in determining the plaintiff's RFC, the ALJ considered both the medical evidence regarding her migraine condition and her testimony about it. In reviewing her testimony, the ALJ noted that "[t]he claimant testified a neurology practice oversees her migraine treatment. . . . She testified that pain interferes with her ability to sleep. . . . The claimant testified regarding frequent migraines and stress aggravates her migraines. She testified migraines can last all day." (Tr. 20.)

Beginning in December 2019, Beatty White began seeing a neurologist for treatment of her migraine headaches, and the ALJ considered those treatment notes:

> . . . A neuro exam from March 17, 2020[,] notes a normal gait and good mental status ([Tr. 2129]). . . .
>
> Regarding headaches, [a July 24, 2020, neurology treatment note (Tr. 2124)] indicates that the claimant did well for [a] time on Topamax for prevention. She rarely had any migraines and she used [U]brelvy as needed. However, the claimant self-reported that

> gradually, the migraine headaches have returned. She
> would like to increase the does of Topamax and she
> likes taking Ubrel[]vy as needed for migraines and
> finds that Ubrel[]vy provides relief.
>
> . . . .
>
> . . . Neurology records from March [17,] 2020[,]
> incidentally note that the claimant's mood has
> improved although she still reported migraines ([Tr.
> 2127]).

(Tr. 22–23.)

The plaintiff complains that the ALJ cited only a single page from the plaintiff's medical records. As the quoted language above demonstrates, he actually cited three—one page from a July 20, 2020, neurology treatment note and two pages from a March 17, 2020, neurology treatment note. Based on the record, the plaintiff appears to have seen her neurologist only *four times*, generating four separate treatment notes: a "new patient" encounter with a nurse practitioner on December 17, 2019 (Tr. 2137–44); a follow-up encounter with a nurse practitioner on February 26, 2020 (Tr. 2130–37); a follow-up encounter with a physician assistant on March 17, 2020 (Tr. 2126–30); and a follow-up encounter with physician assistant on July 24, 2020 (Tr. 2124–26). Based on these treatment notes, however, the ALJ's citation to the most recent treatment note, which summarized the patient's short treatment

history with the neurology clinic, accurately reflected the longitudinal history of her migraine treatment. There wasn't much more for the ALJ to say as far as this particular impairment is concerned.

Without more, the mere existence of migraine headaches does not establish any resulting functional limitations. *See Edghill v. Saul*, Case No. 2:20-cv-461, 2021 WL 2434046, at *9 (D.N.J. June 15, 2021); *see also Foley v. Comm'r of Soc. Sec.*, 349 Fed. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability."); *Harper v. Saul*, Civil Action No. 3:18-cv-637-SRW, 2019 WL 6330921, at *5 (M.D. Ala. Nov. 25, 2019) (finding that a mere diagnosis of migraines "says nothing about the severity of the condition" without evidence of resulting functional limitations). Moreover, the sparse evidence of migraine treatment indicates that the condition was capable of being adequately controlled with medication therapy. *See Dearth v. Barnhart*, 34 Fed. App'x 874, 875 (3d Cir. 2002) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.") (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)).

The plaintiff also complains that the ALJ did not mention or analyze treatment notes by other medical providers documenting her

complaints of migraine headaches. In essence, however, these are oblique references to migraine symptoms from other providers during the same timeframe beginning December 2019, with the earliest notes reflecting her condition prior to commencing medication treatment under the care of her neurology providers. It is well settled that an ALJ is not required to discuss *every* detail of the record evidence cited in his opinion. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008). "A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." *Philips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) (citation omitted).

Although Beatty White quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the plaintiff's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the plaintiff's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination.

While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Beatty White was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate order follows.

Dated: September 30, 2023          _**s/Joseph F. Saporito, Jr.**_
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge